PER CURIAM.
This is an appeal from an order granting a final summary judgment to Jack M. Berry Grove Corporation (Berry) and its insurance carrier.
This action resulted from an accident involving David Maldonado, a three-year old child. David had accompanied his parents, who were citrus pickers, to Berry’s grove. At the grove, David’s parents put him in a large tub while they filled other tubs with fruit. The citrus picking operation called for the tubs to be picked up by a piece of equipment known as a “goat” which travels through the grove and lifts the tubs with a hydraulic device. On this occasion, the goat driver, while operating the goat in reverse, struck David and severely injured him.
Berry had entered into an oral contract with Carl Wilburn, a contract fruit harvester, for the picking of the fruit. Wilburn provided all of the equipment and pickers necessary to accomplish the job. Wilburn owned the goat as well as the other equipment being used in the picking. Wilburn obtained the pickers by contracting with Romero Guiterrez to provide a *610 picking crew. The driver of the goat was one of Gniterrez’s crew. David and his parents brought suit against Berry and Wilburn and Stoney’s High Lift, the manufacturer of the goat, as well as the respective insurance carriers for these parties.
At the outset, it should be noted that the theory of the plaintiff’s cause of action is not that of attractive nuisance. Hence, the liability of a landowner to young children under this doctrine is not applicable. See Crutchfield v. Adams, Fla.App. 1st, 1963, 152 So.2d 808. Berry had tried to discourage the several harvesters with whom it dealt from permitting their pickers to bring children to the groves. Nonetheless, Berry was aware that the practice was continued, at least to some extent. Therefore, the child could not be considered a trespasser. Cf. Libby v. West Coast Rock Company, Inc., Fla. App.2d, 1975, 308 So.2d 602. On the other hand, he could hardly be termed an invitee in the sense of the child who was injured in Burdine’s, Inc. v. McConnell, 146 Fla. 512, 1 So.2d 462, 1941. For purposes of classification, the child, David, would appear to fall most nearly within the category of an uninvited licensee as defined in Wood v. Camp, Fla. 1973, 284 So.2d 691. The duty owed to a licensee is to refrain from wanton negligence or wilful misconduct which would injure him, to refrain from intentionally exposing him to danger and to warn him of a defect or condition known to the landowner, but not open to ordinary observation by the licensee. Post v. Lunney, Fla.1972, 261 So.2d 146. Clearly there is no showing that Berry failed to carry out this duty.
However, the plaintiffs contend that there was an issue of fact regarding Berry’s exercise of control over the operator of the goat so as to create a master-servant relationship. This contention cannot be sustained. The record reflects that there were two types of crews picking fruit for Berry, one being a contract crew and the other known as the company crew. A contract crew was paid a higher rate per box because the contract harvester provided his own equipment, his own gas, his own repairs, and his own pickers. Since the company crew used Berry’s equipment, used Berry’s gas and oil, and had available to them Berry’s repairs, they were paid a lower rate per box for the fruit picked. Wilburn’s pickers were a contract crew.
Neither Wilburn, Guiterrez, nor the pickers was Berry’s employee. Berry made no payroll deductions for Wilburn or for any of the pickers. Berry paid Wilburn according to the number of boxes picked. Wilburn, in turn, paid Guiterrez according to the number of boxes his crew picked. Berry required Wilburn to carry liability insurance as a condition to permitting him to pick the grove. Berry had a supervisor who would tell Wilburn which grove he wanted picked and check periodically to see that the pickers were not damaging the trees. However, he exercised no supervision over the pickers themselves. The ultimate distinction between an employee and an independent contractor is whether the person is free from control with regard to the details of the engagement. Collins v. Federated Mutual Imp. & Hdwe. Ins. Co., Fla.App. 4th, 1971, 247 So. 2d 461. There is no doubt that Berry’s control over these pickers only related to the result. lean M. Light Interviewing Services, Inc. v. State, Fla.App.3d, 1971, 254 So.2d 411.
The plaintiffs also contend that even if Wilburn were an independent contractor, Berry had a nondelegable duty to see that his activities were carried out in a nonnegligent manner. Thus, in Florida Power and Light Co. v. Price, Fla. 1964, 170 So.2d 293, the court held that the work of constructing and energizing an electrical power distribution system was so inherently dangerous that a power company could not escape responsibility for injuries to third parties caused by the negligence of an independent contractor in the perform- *611 anee of the work. The court held that the determination of whether a particular kind of work is to be regarded as inherently or intrinsically dangerous depends upon whether the danger “ ‘. . . inheres in the performance of the work. . . Despite the fact that accidents may happen from time to time, we cannot say that the picking of citrus fruit is inherently dangerous work. Likewise, the fact that Berry knew that the pickers sometimes brought their children to the grove does not bring this case within the principle that where an employer gains knowledge of a dangerous situation created by an independent contractor, it may incur liability through its failure to halt the operation or otherwise remove the danger. See Maule Industries, Inc. v. Messana, Fla.1953, 62 So.2d 737; Peairs v. Florida Publishing Company, Fla.App. 1st, 1961, 132 So.2d S61.
Since there were no genuine issues of material fact with respect to the liability of Berry, the judgment is
Affirmed.
HOBSON, A. C. J., and BOARDMAN and SCHEB, JJ., concur.